David S. Gingras, CSB 218793
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Plaintiffs
The Blacklist Online, LLC and
Shalon Doney

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BLACKLIST ONLINE, LLC, a Delaware limited liability complaint; SHALON DONEY, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> MATTHEW WAGNER, an individual; ADAM CAMBELL, an individual; <br><br> Defendants. | Case No. 22-cv-2378 <br><br> **COMPLAINT** |

For their Verified Complaint, Plaintiffs The Blacklist Online, LLC ("TBO") and Shalon Doney ("Ms. Doney"; collectively "Plaintiffs") allege as follows:

1. This action seeks to resolve a dispute concerning the ownership and operation of a popular cannabis-related news website called "The Blacklist". This action also seeks to stop defendants from unlawfully misappropriating Plaintiffs' federal intellectual property rights associated with The Blacklist, and to resolve certain other disputed matters between the parties.

## **PARTIES**

2. Plaintiff The Blacklist Online, LLC (TBO) is a limited liability company formed and existing under the laws of the State of Delaware on August 24, 2017.

3. TBO's principal place of business is Los Angeles, California.

4. Since its inception, TBO has owned and operated a popular cannabis-related news website called "The Blacklist", currently located at TheBlacklist.xyz. TBO also owns and operates a related Instagram account located at: https://www.instagram.com/theblacklistxyz/.

5. Shalon Doney is an individual currently residing in the State of California. At all times relevant to this matter, Ms. Doney was the organizer, sole owner and sole member of The Blacklist Online, LLC.

6. At all times relevant to this matter, Defendant Adam Campbell ("Mr. Campbell") resided in the State of California and created substantial contacts with this state.

7. At all times relevant to this matter, Defendant Matthew Wagner ("Mr. Wagner") resided in the State of California and created substantial contacts with this state.

## JURISDICTION/VENUE

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves claims arising under federal law, including the Lanham Act, 15 U.S.C. §§ 1114 & 1125 and the Declaratory Judgments Act, 28 U.S.C. § 2201(a).

9. The transactions and occurrences involved in this matter took place in Los Angeles County. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

10. Defendant Adam Campbell is currently married to Ms. Doney. Mr. Campbell and Ms. Doney were married on December 30, 2016.

11. On March 29, 2021, Mr. Campbell filed a Petition for Dissolution in Los Angeles County Superior Court seeking to end his marriage to Ms. Doney.

12. As of the date of this Complaint, the dissolution action remains pending in the Los Angeles Superior Court, Case No. 21CHFL00463. As of the date of this Complaint, no final decree of dissolution has been entered, nor has the Court issued any

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Case 2:22-cv-02378-DSF-MAR   Document 1   Filed 04/08/22   Page 3 of 20   Page ID #:3

temporary or final orders concerning the ownership or distribution of marital assets.

13. In or around 2017, Ms. Doney decided to create a new public forum for the purpose of discussing and sharing news, information, and commentary related to the cannabis industry. This forum initially began as an Instagram page located at https://www.instagram.com/theblacklistxyz/, a portion of which is shown below.



14. The Blacklist's Instagram page has become extremely popular, attracting more than 383,000 followers.

15. The Blacklist has become extremely well-known in the cannabis-related industry both in California and the United States.

16. To help expand the reach of The Blacklist, in early 2017 Mr. Doney created a website located at https://theblacklist.xyz/ which is shown below.



17. On August 24, 2017, Ms. Doney formed The Blacklist Online, LLC as a Delaware limited liability company. Since its inception and through the present day, Ms. Doney was and is the sole member and manager of TBO.

18. A copy of TBO's current operating agreement, listing Ms. Doney as the sole member and manager of the LLC, is attached hereto as Exhibit A and is incorporated herein by reference.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

1  19. Among other things, since its inception, TBO has used the term "The
2  Blacklist" as a trademark for the purpose of identifying its services offered to consumers.
3  20. At all times relevant to this matter, TBO was sole and exclusive owner of a
4  registered trademark for the mark "The Blacklist", USPTO Reg. No. 6130368, which it
5  has continuously used in commerce since early 2017 ("The Blacklist Mark").



21. As a result of TBO's extensive and continuous use of The Blacklist Mark in connection with its business, TBO owns enforceable trademark rights and valuable goodwill symbolized by its mark. Readers of TBO's Instagram page and website have come to associate TBO as the sole source of services associated with the well-known Blacklist Mark.

**SUMMARY OF DEFENDANTS' ACTIONS**

22. At certain times in late 2019 through early 2020, and later in mid-2021 Defendant Wagner provided services to TBO on an independent contractor basis.

23. Specifically, Mr. Wagner agreed to sell advertising services on behalf of TBO. In return, TBO agreed to pay Wagner a percent commission for any deals he sold.

24. The relationship between TBO and Mr. Wagner continued until July 2021, at which time the relationship ended.

25. Since July 2021, Wagner has not been authorized to act on behalf of TBO in any capacity, nor has Wagner had authority to use any of TBO's trademarks for any commercial purpose.

26. While the relationship between TBO and Mr. Wagner existed, TBO paid Mr. Wagner any and all amounts owed pursuant to the parties' agreement.

27. On March 9, 2022, Mr. Wagner (acting through counsel) sent a letter containing various allegations and demands related to Ms. Doney and The Blacklist, a copy of which is attached hereto as Exhibit B and incorporated herein by reference. In this letter, Mr. Wagner asserted "legal claims of ownership, embezzlement, fraud, wage and hour violations, breach of contract, workplace violence and harassment, wrongful termination, emotional distress, slander, and intentional interference with economic opportunities against theblacklistxyz and Shalon Doney personally."

28. Mr. Wagner's claim of "ownership" relating to The Blacklist is entirely groundless. Mr. Wagner has no ownership interest in The Blacklist or TBO, and no basis for asserting any such claim(s).

29. The remaining claims asserted by Mr. Wagner against Ms. Doney are legally and/or factually without merit.

30. Since the inception of The Blacklist, Mr. Campbell has had no significant role in the site's management or operation.

31. Mr. Campbell is not now, nor has he ever been, a member, owner, or manager of TBO.

32. Because TBO was formed during the marriage of Ms. Doney and Mr. Campbell, it is undisputed that TBO is characterized as community property pursuant to Cal. Fam. Code § 760.

33. It is further undisputed that Mr. Campbell is entitled to receive half the value of TBO in such amount as the family court may eventually determine in the dissolution proceeding.

34. However, since its inception, Ms. Doney has been the sole operator and manager of TBO, and she remains as such today.

35. Accordingly, pursuant to Cal. Fam. Code § 1100(d), Ms. Doney "has the primary management and control of the business" of The Blacklist and she "may act alone in all transactions" related to the business.

36. Because Mr. Campbell does not have, and has never had, primary management and control of the business, and because he is not and has never been a member of manager of TBO, he is not authorized to act on behalf of TBO, nor is he authorized to use any of TBO's trademarks for any commercial purpose.

37. Within the last several weeks, Ms. Doney learned that Defendants Campbell and Wagner have both used TBO's trademarks for various commercial purposes despite having no authority to do so. Defendants' actions are likely to cause, and have actually caused, substantial consumer confusion regarding the ownership of TBO and the source of services provided by The Blacklist.

38. For instance, over the last several weeks, Ms. Doney has been contacted through The Blacklist's Instagram account by several individuals who stated that it was "*nice meeting you*" (or words to that effect), suggesting the individual had recently spoken to someone who represented themselves as being associated with The Blacklist.

39. Ms. Doney was surprised by these messages because during the time frame in question, she had not met or spoken with any of the individuals who contacted her, nor had she authorized anyone else to do so.

40. Upon further investigation, Ms. Doney determined each individual who

contacted her had actually spoken with Mr. Campbell and/or Mr. Wagner, both of whom falsely represented that they were associated with "The Blacklist" or that they were authorized to act on behalf of TBO and/or The Blacklist.

41. On March 25, 2022, Ms. Doney sent a written demand to Mr. Wagner, though his counsel, informing him that he was not authorized to act on behalf of TBO/The Blacklist, and demanding that Mr. Wagner immediately cease and desist from any and all use of TBO's marks related to The Blacklist.

42. Despite this demand, Mr. Wagner has continued to violate TBO's trademark rights by falsely representing to TBO's actual and/or potential customers that Mr. Wagner is associated with The Blacklist and that he is authorized to act on behalf of the site.

43. For example, on or around March 28, 2022, Mr. Wagner and Mr. Campbell scheduled a lengthy (day-long) meeting with Seabright Farms, a cannabis company located in Long Beach, California. The meeting was scheduled to take place from 9:30 am to 6:30 pm on April 4, 2022.

44. Seabright Farms was and is a potential customer of The Blacklist.

45. According to a written agenda obtained by Ms. Doney, Mr. Wagner and Mr. Campbell each represented to Seabright Farms that they were acting on behalf of "The Blacklist", and that the intended purpose of the meeting was: "To discuss a partnership with [the] blacklist and Seabright, for the purpose of creating a certification and verification program for cannabis. Also, to create the first Blacklist certified B2B manufacturing facility and educational center at Seabright."

46. At no time did Mr. Doney authorize Mr. Wagner or Mr. Campbell to participate in the meeting with Seabright Farms on behalf of TBO or The Blacklist.

47. By fraudulently misrepresenting their relationship with The Blacklist to third parties such as Seabright Farms (and others), and by using TBO's registered mark without authority, Defendants have harmed The Blacklist's commercial reputation and have caused significant confusion among actual and potential customers of The Blacklist.

## FIRST CAUSE OF ACTION
### (Trademark Infringement)
### (Against All Defendants)

48. Plaintiffs repeat and incorporate by reference the allegations of the preceding paragraphs.

49. As alleged above, Defendants' have used The Blacklist Mark in commerce without authority. Among other things, Defendants have, without the consent of TBO, used TBO's registered trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services in a manner that is likely to cause confusion, or to cause mistake, or to deceive.

50. Defendants' actions are likely to cause, and have actually caused, confusion, deception, and mistake by creating the false impression that Defendants are associated with The Blacklist and are authorized to act on behalf of TBO when, in fact, they are not.

51. Defendants' actions have further harmed TBO's goodwill by creating the false impression that Defendants have the sponsorship, endorsement or approval of TBO and The Blacklist when, in fact, they do not.

52. Unless enjoined by this Court, Defendants will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to TBO's goodwill and reputation by infringing TBO's registered trademark, for which TBO has no adequate remedy at law.

53. Based on the foregoing, TBO is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, 1117 and 1125.

## SECOND CAUSE OF ACTION
### (Declaratory Relief)
### (Against All Defendants)

54. Plaintiffs repeat and incorporate by reference the allegations of the

9

preceding paragraphs.

55. A current dispute exists between Plaintiffs and Defendants regarding their respective legal rights and duties, including with respect to the claims asserted by Mr. Wagner in his letter to Ms. Doney dated March 9, 2022.

56. Pursuant to 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57, Plaintiffs are entitled to declaratory relief as follows:

    a. Plaintiffs are entitled to an order declaring that Ms. Doney is the sole and exclusive member and manager of TBO;

    b. Plaintiffs are entitled to an order declaring that Mr. Wagner does not have, and has never had, any ownership interest in The Blacklist or TBO;

    c. Plaintiffs are entitled to an order declaring that pursuant to Cal. Fam. Code § 1100(d), Ms. Doney "has the primary management and control of the business" of The Blacklist, and that she "may act alone in all transactions" related to the business, including terminating any authority Mr. Campbell may have previously had with TBO or The Blacklist;

    d. Plaintiffs are entitled to an order declaring that pursuant to Cal. Fam. Code § 1100(d), Mr. Campbell does not have, and has never had, primary management and control of The Blacklist, and is not entitled to act on behalf of TBO and/or The Blacklist in any capacity;

    e. Plaintiffs are entitled to an order declaring that Mr. Campbell and Mr. Wagner are not authorized to act on behalf of TBO in any capacity, and are not entitled to use any of TBO's trademarks in connection with the offering or advertising of any goods or services.

    f. Plaintiffs are entitled to an order determining that TBO has paid Mr. Wagner all amounts due under the parties' agreement, and that Mr. Wagner is owed nothing further for any advertising or other services he performed for TBO.

**JURY DEMAND**

Plaintiffs demand trial by jury as to all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For damages according to proof at trial;

B. For a judgment declaring the rights and legal relations of the parties as set forth above;

C. For preliminary and permanent injunctive relief prohibiting Defendants from infringing any of TBO's trademarks;

D. For an award of all attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1117(a);

E. For an award of taxable costs pursuant to 28 U.S.C. § 1920;

F. For such other and further relief as the Court deems just and proper.

DATED: April 8, 2022.            **GINGRAS LAW OFFICE, PLLC**

　　　　　　　　　　　　　　　　　　　 _/s/ David S. Gingras_
　　　　　　　　　　　　　　　　　　　 David S. Gingras, Esq.
　　　　　　　　　　　　　　　　　　　 Attorney for Plaintiffs

# Exhibit A

# Operating Agreement

A private agreement between the members/owners of the LLC, and it details the ownership, rights, and responsibilities of the LLC members.




Prepared by incfile

**LIMITED LIABILITY COMPANY**
**OPERATING AGREEMENT OF**
**THE BLACKLIST ONLINE, LLC**

This agreement is made effective on the _____ day of _____, _____ among the member(s) and the company.

**1. Formation.** A limited liability company (LLC) of the above name has been formed under the laws of the State of Delaware by filing Articles of Organization (or similar organizing document) with the Secretary of State (or other appropriate office) on 08/24/2017. The purpose of the business shall be to carry on any activity which is lawful under the jurisdiction in which it operates. The LLC may operate under a fictitious name or names as long as the LLC is in compliance with applicable fictitious name registration laws. The term of the LLC shall be perpetual or until dissolved as provided by law or by vote of the member(s) as provided in this agreement. Upon dissolution the remaining members shall have the power to continue the operation of the LLC as long as necessary and allowable under state law until the winding up of the affairs of the business has been completed.

**2. Members.** The name and address of each initial limited liability company member is:

SHALON DONEY CAMPBELL
427 N TATNALL ST #85149
WILMINGTON , DE 19801

**3. Contributions.** The capital contribution of each limited liability company member in exchange for their LLC ownership is:

| Name | LLC Ownership | Capital Contribution |
| --- | --- | --- |
| SHALON DONEY CAMPBELL | 100 % | $_____ |

**NOTE:** The capital contribution may be in the form of cash (or cash equivalents), labor or services (past or future), or property/equipment/assets other than cash. Regardless of the type of capital contribution, it should be expressed above in a dollar equivalent value that is agreed upon by all limited liability company members. Additionally, there may be accounting/tax ramifications for individuals contributing capital other than cash.

**4. Profit and Loss.** The profits and losses of the limited liability company shall be distributed amongst the members in proportion with the ownership of each member by default, but this may be changed at any time upon a unanimous vote of the members.

**5. Distributions.** The limited liability company shall have the power to make distributions to its members in such amounts and at such intervals as a majority of the members deem appropriate according to law.

**6. Management.** The limited liability company shall be managed by all LLC members. Any member may bind the LLC in all matters in the ordinary course of LLC business. In the event of a dispute between members, final determination shall be made with a vote by the members, votes being proportioned according to capital contributions.

**7. Registered Agent.** For receipt of official legal and tax correspondence from the State of Delaware, the registered agent of the limited liability company (sometimes known as a resident agent, statutory agent, agent for service of process, or delivery of service address) shall be maintained in accordance with the requirements of the State of Delaware.

**8. Assets.** The assets of the limited liability company shall be registered in the legal name of the LLC and not in the names of the individual members, unless approved by a majority vote of the members.

**9. Records and Accounting.** The limited liability company shall keep an accurate accounting of its affairs using any method of accounting allowed by law. All members shall have a right to inspect the records during normal business hours. The members shall have the power to hire such accountants as they deem necessary or desirable.

**10. Banking.** The members of the limited liability company shall be authorized to set up bank accounts as in their sole discretion are deemed necessary and are authorized to execute any banking resolutions provided by the institution in which the accounts are being set up, or by adopting their own resolution.

**11. Taxes.** The limited liability company shall file such tax returns as required by law. The LLC shall elect to be taxed as a majority of the members decide is in their best interests. The "tax matters partner," as required by the Internal Revenue Code, shall be appointed by unanimous consent of the members.

**12. Separate Entity.** The limited liability company is a legal entity separate from its members. No member shall have any separate liability for any debts, obligations, or liability of the LLC except as provided in this agreement.

**13. Indemnity and Exculpation.** The limited liability company shall indemnify and hold harmless its members, managers, employees, officers, and agents to the fullest extent allowed by law for acts or omissions done as part of their duties to or for the LLC. Indemnification shall include all liabilities, expenses, attorney and accountant fees, and other costs reasonably expended. No member shall be liable to the LLC for acts done in good faith.

**14. Meetings.** The members shall have no obligation to hold annual or any other meeting, but may hold such meetings if they deem them necessary or desirable.

**15. Amendment of this Agreement.** This agreement may not be amended except in writing signed by all of the members.

**16. Conflict of Interest.** No member shall be involved with any business or undertaking which competes with the interests of the limited liability company except upon agreement in writing by all of the members.

**17. Deadlock.** In the event that the members cannot come to an agreement on any matter the members agree to submit the issue to mediation to be paid for by the limited liability company. In the event the mediation is unsuccessful, they agree to seek arbitration under the rules of the American Arbitration Association.

**18. Dissociation of a Member.** A member shall have the right to discontinue membership upon giving thirty days notice. A member shall cease to have the right to membership upon death, court-ordered incapacity, bankruptcy or expulsion. The limited liability company shall have the right to buy the interest of any dissociated member at fair market value.

**19. Dissolution.** The limited liability company shall dissolve upon the unanimous consent of all the members or upon any event requiring dissolution under state law. In the event of the death, bankruptcy, permanent incapacity, or withdrawal of a member the remaining members may elect to dissolve or to continue the operation of the LLC.

**20. General Provisions.** This agreement is intended to represent the entire agreement between the parties. In the event that any party of this agreement is held to be contrary to law or unenforceable, said party shall be considered amended to comply with the law and such holding shall not affect the enforceability of other terms of this agreement. This agreement shall be binding upon the heirs, successors, and assigns of the members.

**IN WITNESS whereof, the members of the limited liability company sign this agreement and adopt it as their operating agreement this _____ day of _____, _____.**

_____
**SHALON DONEY CAMPBELL , MEMBER**

# Exhibit B

<div align="center">

**Law Office of Daniel S. Miller**
412 Olive Avenue, Suite 620
Huntington Beach, California 92648
Phone (714) 342-5992
Fax (714) 415-5535
danmilleresq@mac.com

</div>

March 9, 2022

Ms. Shalon Doney
Theblacklistxyz (via email)

I represent Matt Wagner regarding his legal claims of ownership, embezzlement, fraud, wage and hour violations, breach of contract, workplace violence and harassment, wrongful termination, emotional distress, slander, and intentional interference with economic opportunities against theblacklistxyz[1] and Shalon Doney personally.

In 2019, Mr. Wagner moved to California to dedicate his life to the cannabis industry, in what he describes as his "calling". After living and working in Northern California learning the industry from the ground up, in October 2019 Mr. Wagner was introduced to the theblacklistxyz by a close mutual friend of Ms. Doney and Mr. Wagner who flew into Los Angeles from Missouri to make the introduction.

The introduction went well and from October 2019 to January 2020 Mr. Wagner drove from his home in Hollywood to Adam Campbell (the founder of theblacklistxyz) and Ms. Doney (Mr. Campbell's wife) home in Northridge. Mr. Wagner would arrive on schedule between 9-10 am every day. At that time theblacklistxyz was a website and Instagram page with no business or even clear idea on how to monetize itself. Matt worked full time without pay, borrowed money from his parents, reduced his living cost by moving into a shared apartment and did odd jobs for friends to make ends meet.

When Mr. Wagner started working at theblacklistxyz, it had been an anonymously owned and operated platform. However, to monetize the business, in late 2019 the theblacklistxyz decided to give companies the opportunity to advertise on the page. But to do that, companies had to meet with a real person and theblacklistxyz decided that Mr. Wagner would be that person.

Mr. Wagner then began meeting with cultivators, operators, manufactures, lawyers, and other ancillary businesses in the commercial cannabis industry. In early December 2019, Mr. Wagner closed his first advertising deal for the platform for $5,000, with Mr. Wagner getting paid one third of the fee. From that point on, Mr. Campbell, Ms. Doney, and Mr. Wagner agreed that everything would be split one third each. Mr. Wagner was instructed to give Shalon two thirds of any money that he collected from sales which he did. To close out December 2019, Mr. Wagner was able to close two more advertising deals totaling $10,000.

By the end of 2019, theblacklistxyz was officially in business, and Mr. Wagner had become "the face" of theblacklistxyz. In January 2020, with finances tight for Mr. Campbell and Ms. Doney,

---

[1] Theblacklistxyz refers to any of the following entities or business names The Blacklist Online LLC – Delaware, MWSD LLC – Delaware, XYZ News Corp, The Blacklist LLC, BLX Corp. It also includes any entity or business name now being used for the same business as theblacklistxyz.

Mr. Wagner agreed to move into Campbell's spare bedroom and paid $1,000 a month in rent. Mr. Wagner was now literally living and working non-stop for theblacklistxyz where he strategized, cold called, prospected, networked, cultivated relationships, helped design avenues to service companies, closed deals, and managed the clients. This was on top of the prior responsibilities he had to consistently research newswires, reddit, various platforms, forums to aggregate content, create campaign concepts, conduct interviews, and draft copy for articles and posts on theblacklistxyz. All the cost of travel, network lunches, and other company expenses were paid by Mr. Wagner without any reimbursement.

During this time, Mr. Wagner sat for interviews for two prominent articles that appeared about theblacklistxyz. One in Merry Jane Magazine calling theblacklistxyz the "Most Disruptive Voice in Weed" and another in Candid Chronicle. These articles put theblacklistxyz on the map, but also put Mr. Wagner in danger since he had become the face of theblacklistxyz, a platform designed to call out the bad actors in the cannabis industry.

Being the face of theblacklistxyz came with costs. Mr. Wagner's name became so tied to theblacklistxyz that when someone was upset with something posted on theblacklistxyz, Mr. Wagner's name was dragged through the mud. The attacks were extensive, including but not limited to death threats, defamation, stalking, doxing (publishing of personal identifying information) of Mr. Wagner and his family, harassment of his parents in the form of numerous phone calls, not to mention the psychological and emotional toll it took on them all.

While Mr. Wagner was the face of the business, the followers grew by a staggering 431% and had developed working business strategy including forward looking revenue streams Mr. Wagner helped to develop. Theblacklistxyz had come from zero monetization and the founders needing Mr. Wagner to close deals and move into their home to make ends meet to a valuable respected voice in the sector. In December 2020, Mr. Wagner closed his biggest month, totaling at 60k in advertising sales.

In January, based upon these numbers, Ms. Doney sold half of the business for an unknown amount to Dallas Imbimbo, receiving $250,000 into her bank account. She made the deal promising Mr. Wagner $50,000 for his work and a salary moving forward. Mr. Wagner became aware that Ms. Doney and Mr. Imbimbo were sabotaging his effort, and he was forced to walk away.

As a result of being forced out of theblacklistxyz, Mr. Wagner underwent a serious hardship, not having any income he racked up over $3,000 in credit card debt, which he is still unable to pay. Although Mr. Wagner was not making any money, theblacklistxyz was also not making any money without Mr. Wagner and Ms. Doney begged Mr. Wagner to come back. After a few discussions, Mr. Wagner and Ms. Doney agreed to move forward with Mr. Wagner's percentage increased from one third to fifty percent and a renewed promise Mr. Wagner would be an equity partner with theblacklistxyz and its future business ventures. One of those ventures was already in discussions with theblacklistxyz negotiating with Immersia to become a replacement partner for Mr. Imbimbo who had soured on his relationship with Ms. Doney.

Upon returning to work at theblacklistxyz Mr. Wagner began doing what he did best, closing sales and driving revenue. Mr. Wagner negotiated and closed advertising deals with T3 Greenhouse Supply and a lawyer, William Kroger. Despite Mr. Wagner having sold advertising and posts to new and former clients, theblacklistxyz was not fulfilling its obligation to timely post as agreed. Clients began pressing Mr. Wagner about the post and when he brought the clients'

concerns to Ms. Doney she would say "Matt, that is your problem" and left Mr. Wagner with nothing to tell clients. On top failing to post as agreed, theblacklistxyz never paid Mr. Wagner for the sales he made. Mr. Wagner continued to press his concerns to Ms. Doney, which made her become angry and both physically and verbally abusive. In November 2020, Mr. Wagner left theblacklistxyz because he was physically beaten up once again by Ms. Doney and simply could not work in such a toxic environment.

Mr. Wagner is still dealing with the ramifications of his involvement with theblacklistxyz. In early February 2022 people posted his picture across multiple platforms, making terrible accusations against Mr. Wagner which he continues to defend himself against. Mr. Wagner is still being held publicly responsible for the misgivings of Ms. Doney as evidenced in the comments naming Mr. Wagner in posts related to how theblacklistxyz just treated a respected journalist in the cannabis sector.

Despite the numerous legal claims Mr. Wagner has, he believes that a quick, fair, financially appropriate, private resolution is the best route for everyone involved. To facilitate that, we propose we set a time to attempt to negotiate a resolution within the next two weeks. Should you be unwilling to do so, I will file and serve a complaint for damages and proceed with litigation to prove the facts set forth in this letter.

_____
Dan Miller